WILLIAM GOODENOUGH, PLAINTIFF IN ERROR, v. THE
PENNSYLVANIA RAILROAD COMPANY, DEFENDANT
IN ERROR.

Where a driver of a team, in approaching a railroad crossing, had his
view so intercepted by buildings that he could catch only glimpses
of a limited portion of the track from particular points in the cross
street upon which he was driving, until he reached the side of a street
in which the track was laid, the said side being twenty-three feet from
the nearest rail of the track, and at that point his view was further
intercepted by trees growing along the curb line of said street—*Held*,.
that it is not so clear that he could, by proper vigilance, have avoided.
a stroke by an approaching engine, giving no audible signals, as to
warrant a nonsuit.

On error to the Supreme Court.

For the plaintiff in error, *John W. Wescott* and *Samuel K.*
*Robbins.*

For the defendant in error, *Samuel H. Grey* and *William*
*S. Gummere.*

The opinion of the court was delivered by

REED, J.   This action is against the Pennsylvania Railroad Company to recover for injuries received by the plaintiff
while he was crossing the company's track in Moorestown,
New Jersey.   At the close of the plaintiff's case he was non-
suited upon the ground that his own negligence contributed
to his injury.   An exception was sealed.   The writ of error
presents the single question whether the evidence supports
this ruling.

The plaintiff's testimony shows that the track of the railroad is laid on Third street, running in an easterly and westerly direction.   The plaintiff was driving on Mill street, in
a northerly direction, across these tracks.   He was sitting on
the front seat of a market wagon.   He stopped his horse
when within fifty feet of Third street.   He put his head out.

of the wagon and looked and listened. Then he walked his horse on until near the track—until within twenty or twenty-four feet of the track. "Then," the plaintiff says, "I listened and looked one way—I could not see the other way—and I started my horse up on a trot."

The locomotive struck the hind wheels of his wagon while he was crossing the track. There was given no audible signal of the approach of the train. The train was moving in a westerly direction, and so was coming down on the right-hand side of the wagon. It was in this direction that the plaintiff says he could not see.

Is it clear that he could have seen the train in time to avoid the collision?

At the southerly corner of Mill and Third streets there is a vacant lot fenced in, upon which lot corn was then growing. The lot fronts one hundred and twenty-nine feet on Mill street and sixty-three and one-half feet on Third street. Next to it, on Third street, is an alley five and one-half feet in width; then comes a house built up to the street line, on a seventy-foot lot; then a vacant lot; then another house, built up to the street, with a barn situated sixty feet back. There were other buildings, grape arbors, &c., scattered along the southerly side of Third street.

While glimpses of a moving train, passing certain points on the track, might be had by a person stationed at a particular point on Mill street, it does not seem that at any point a view of the track for any considerable distance could be had. It does not appear that observation from any point before reaching Third street, would aid the driver in ascertaining whether a train was moving upon some other portion of the track, in a way likely to endanger him in crossing. When the plaintiff, therefore, moved on from the place where he stopped, he was guilty of no negligent act.

He then walked his horse until he came nearly to the southerly line of Third street. Here, he says that he looked to the left, but could not see to the right. The southerly line of Third street is twenty-three feet from the southerly rail of

the railroad track. Neither the corn growing in the vacant lot nor the fence around it would obstruct his vision, even if he looked before he was quite up to the street line, for he, from his seat in the wagon, could look over the corn and fence; so, if there had been no obstruction in the street itself, there would seem to exist no reason why he could not have seen the approaching train in time to avoid the collision.

But there were trees growing in Third street. Two were in front of the corner lot already mentioned. These two were bushy maples from sixteen to eighteen inches in diameter, standing along the curb line, about seventeen feet from the railroad. The lower limbs were from six to seven feet from the ground; so low as to intercept the view of the driver. They spread in all directions, four or five feet.

Taking into consideration the presence of these and the other trees in the street, we think that it is not entirely clear that proper vigilance on the part of the driver would have prevented the collision. We think it is not so clear as to warrant the nonsuit.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, DIXON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH. 13.