JAMES C. DOBBS, RESPONDENT, v. WEST JERSEY AND SEA-
SHORE RAILROAD COMPANY, PROSECUTOR.

Submitted March 19, 1909—Decided June 22, 1909.

Where there is evidence to show that the statutory signal was not given by the defendant at a street which crossed its tracks at right angles, and the obstructions and surroundings were such as to be likely to confuse the vision of a person driving along such street toward the defendant's tracks at the crossing point, the verdict of the jury will not be disturbed upon *certiorari* to a District Court. The driver's negligence is a question for the jury.

On *certiorari* to the District Court of Camden.

Before Justices REED, TRENCHARD and MINTURN.

For the defendant and prosecutor, *Gaskill & Gaskill.*

For the plaintiff below, *Wilson, Carr & Stackhouse.*

The opinion of the court was delivered by

REED, J.   Walter Dobbs and Charles B. Esher were, on April 5th, 1908, driving a buggy along Essex street in Gloucester, which street crosses at right angles the tracks of the West Jersey and Seashore railroad.   There are three railroad tracks at the place of crossing.   The buggy was struck by a northbound train running upon the middle one of these tracks. The horse and buggy belonging to the plaintiff, James C. Dobbs, were injured by the collision.   Upon the trial in the District Court the jury rendered a verdict for the plaintiff.

The reasons assigned for reversing the judgment entered upon this verdict are that the trial court should have directed a nonsuit, or else should have directed a verdict for the defendant on the grounds—*first,* that there was no evidence to show negligence of the defendants, and *second,* that the drivers of the buggy were guilty of contributory negligence.

In respect to the negligence of the defendant, there was evidence to show that the statutory signal for this crossing was not given by the defendant's servants.

Respecting the negligence of the driver of the buggy, the conditions existing at the crossing, were these:   To the south whence the train was coming, there stood a row of houses, the corner one being a three-story brick building.   No view could be had to the south until the driver of the buggy had passed this house.   From the middle track, upon which the train was approaching, to the front of this house, there seems to have been a space of about fifty feet.

In this space was a porch extending six feet from the house, then a distance of thirty-three feet to the nearest track, and then a distance of thirteen feet to the middle track.   The

porch did not obstruct the view south. Had these houses been the only obstruction to the southern view, the driver would have been clearly negligent. But there was a line of telephone poles intervening. The line of these poles ran about twenty-five feet from and parallel with the middle track. These poles were numerous, being erected for the use of three different companies. The poles were large, and the photograph of the locality exhibits an array of these poles entirely unusual, and quite likely to confuse the vision of a person driving along Essex street toward the track between the line of the corner house and the line of these poles. There were other obstructions of less importance. The situation was quite similar to that in the case of *Goodenough* v. *Pennsylvania Railroad Co., 26 Vroom* 596.

We are of the opinion that the driver's negligence was a question for the jury.

Judgment is affirmed.